## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| INDIAN HARBOR INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: ___23-15547___ |
| | ) | |
| v. | ) | |
| | ) | |
| MCHUGH/CLARK, A JOINT VENTURE; | ) | |
| BIT WOLF POINT WEST INVESTORS, LLC; and | ) | |
| YUANDA USA CORPORATION | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

NOW COMES Plaintiff, INDIAN HARBOR INSURANCE COMPANY ("IHIC"), by and through its attorneys, Karbal, Cohen, Economou, Silk & Dunne, LLC, and herein submits its Complaint for Declaratory Judgment against Defendants, MCHUGH/CLARK, A JOINT VENTURE ("McHugh/Clark"); BIT WOLF POINT WEST INVESTORS, LLC ("BIT WPW"); and YUANDA USA CORPORATION ("Yuanda"). In support thereof, IHIC states as follows:

## NATURE OF THE ACTION

1.    This is an insurance coverage action seeking declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure. In this action, IHIC seeks a declaration of the parties' rights and obligations under commercial general liability insurance policies and excess liability insurance policies issued by IHIC to Yuanda (the "Policies") with respect to the lawsuit captioned *BIT Wolf Point West Investors, LLC v. McHugh/Clark, a Joint Venture*, No. 2023L007571, pending in the Circuit Court of Cook County, Illinois, Law Division (the "Suit"). A copy of the complaint filed in the Suit is attached as Exhibit A (the "Underlying Complaint").

2.     McHugh/Clark is a defendant in the Suit and seeks coverage for the Suit as an additional insured under the IHIC Policies.

3.     IHIC has no obligation to defend or indemnify McHugh/Clark in connection with the Suit under the IHIC Policies due to one or more of the following bases: (a) there is no "property damage" alleged in the Suit; (b) there is no "occurrence" alleged in the Suit; (c) any coverage for the Suit is barred by the Contractual Liability Exclusion; (d) underlying insurance has not been exhausted; and (e) various other terms, exclusions and/or policy provisions in the IHIC policies.

4.     An actual and justiciable controversy exists between IHIC and McHugh/Clark in that IHIC alleges that it has no duty to defend and/or indemnify McHugh/Clark with respect to the Suit and McHugh/Clark disputes IHIC's position.

## THE PARTIES

5.     Plaintiff IHIC is an insurance company organized and existing under the laws of the State of Delaware, with its principal place of business in Connecticut.

6.     Defendant McHugh/Clark is a joint venture between James McHugh Construction Company and Clark Construction Group – Chicago LLC.

7.     James McHugh Construction Company is a corporation organized under the laws of Illinois with its principal place of business in Illinois.

8.     Clark Construction Group – Chicago LLC is an Illinois limited liability company whose sole member is Clark Construction Group, LLC.  Clark Construction Group, LLC is a Maryland limited liability company whose sole member is Clark Construction LLC.  Clark Construction LLC is a is a Maryland limited liability company whose members are William R. Calhoun, Jr.; Robert D. Moser; and Harold K. Roach, Jr.  Harold K. Roach, Jr. is domiciled in

Maryland, William R. Calhoun, Jr. is domiciled in Michigan, and Robert D. Moser is domiciled in Virginia.

9.      Defendant BIT WPW is a Delaware limited liability company whose sole member is Wolf Point West Holdings LLC.  Wolf Point West Holdings LLC is a Delaware limited liability company whose sole member is Hines/Magellan Wolf Point West LLC.  Hines/Magellan Wolf Point West LLC is a Delaware limited liability company whose sole member is either C. Kevin Shannahan or Steve Luthman, both of whom are domiciled in Illinois.  BIT WPW is named herein solely as a party with a potential interest in the outcome of the insurance dispute.  Should BIT WPW agree to be bound by the final order entered in this case, including any appeal, IHIC will dismiss it from this lawsuit.

10.     Defendant Yuanda is a corporation organized and existing under the laws of the State of Illinois, with its principal place of business in Illinois.  Yuanda is named herein solely as a party with a potential interest in the outcome of the insurance dispute.  Should Yuanda agree to be bound by the final order entered in this case, including any appeal, IHIC will dismiss it from this lawsuit.

## JURISDICTION AND VENUE

11.     Jurisdiction is proper in this Court, pursuant to 28 U.S.C. § 1332(a), because there is complete diversity of citizenship between IHIC, on the one hand, and the Defendants, on the other hand, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

12.     Venue is proper in this District, pursuant to 28 U.S.C. § 1391(b), because one or more of the Defendants reside within or are otherwise subject to personal jurisdiction in this District and a substantial part of the events or omissions giving rise to this dispute occurred in this District, including the Suit.

**THE UNDERLYING SUIT**

13.     The Suit was filed by BIT WPW against McHugh/Clark on or about July 31, 2023 and arises out of alleged defects in certain vent windows which BIT WPW claims were procured, furnished and/or installed, or caused to be procured, furnished and/or installed by McHugh/Clark at an apartment building located at 343 W. Wolf Point Plaza, Chicago, Illinois 60654 (the "Building").

14.     The Underlying Complaint alleges that McHugh/Clark was the general contractor for the Building, pursuant to a February 5, 2014 contract between it and BIT WPW (the "Construction Contract"), which contract also identified certain responsibilities that McHugh/Clark owed to BIT WPW.

15.     The Underlying Complaint alleges that, included among the responsibilities McHugh/Clark assumed in the Construction Contract were responsibilities for completing the contracted work in a good and workmanlike manner, consistent with design requirements, and that McHugh/Clark would be solely responsible for and have control over the construction means and methods, including for acts and omissions of McHugh/Clark's employees, suppliers, consultants, subcontractors, and sub-subcontractors.

16.     In the Underlying Complaint, BIT WPW alleges that the purported window defects "came to light" following incidents at the Building on June 8 and August 20, 2021.

17.     The Underlying Complaint alleges that on June 8, 2021, a vent window sash disconnected from its curtain wall frame and fell down the Building before eventually landing in the Chicago River.

18.     The Underlying Complaint alleges that on August 20, 2021, another window detached, but did not fall to the ground.

19.     The Underlying Complaint does not allege any persons were injured as a result of these events.

20.     According to the Underlying Complaint, tenants of the Building "were instructed" to keep any Building windows closed after the aforementioned incidents.

21.     The Underlying Complaint alleges that the tenants of the Building "sought and received" rent reductions "and other concessions" as a result of this instruction to keep the Building windows closed.

22.     The Underlying Complaint alleges that, as the general contractor for the Building, McHugh/Clark "procured, furnished, constructed, installed and/or inspected the vent windows, and/or caused and/or supervised those tasks, and was responsible for providing all appropriate warranties."

23.     According to the Underlying Complaint, McHugh/Clark "failed to comply with the support arm manufacturer's recommendations by not installing a limit arm or other mechanism to prevent the windows from detaching when in an open position" as specified in the Construction Contract and did not use the "balancing" style hinge required by the support arm manufacturer.

24.     The Underlying Complaint further alleges that the defects present in the Building's vent windows "were caused by McHugh's improper procurement, furnishment, construction, installation and/or inspection of those windows, including, but not limited to, the failure to install balanced style hinges and limit arms" and that the vent window defects "constitute an unreasonably dangerous condition."

25.     The Underlying Complaint alleges that the purported defects in the vent windows "necessitate the repair or replacement of the affected windows," that the number of affected windows is over 1,000, and that the cost "of that repair and/or replacement" is over $75,000.

26.     As a result, of the above, BIT WPW asserts three causes of action against McHugh/Clark in the Suit – (1) Breach of the Construction Contract; (2) Breach of Express Warranty in the Construction Contract; and (3) "Strict Liability" for creating an unreasonably dangerous condition in the Building.

27.     In its prayer for relief contained in the Underlying Complaint, BIT WPW seeks "all costs of replacing all support arms for the Building's vent windows with appropriate hardware," reimbursement of all rent reductions and other costs associated with "disruptions to the Building's tenants," attorneys' fees and costs, and other relief as the underlying court deems proper.

28.     On or about August 30, 2023, McHugh/Clark tendered the Suit to IHIC, seeking coverage as an additional insured under the insurance policies issued by IHIC to Yuanda.

29.     On November 1, 2023, IHIC declined coverage to McHugh/Clark under the insurance policies issued by IHIC to Yuanda.

**THE PRIMARY POLICIES**

30.     IHIC issued the following primary insurance policies to Yuanda which are the subject of this action (copies of which attached as Exhibits B-F):

| Policy Number | Policy Period |
|---|---|
| ESG0051662 | 4/06/18 - 4/06/19 |
| ESG005166201 | 4/06/19 - 4/06/20 |
| ESG005166202 | 4/06/20 - 4/06/21 |
| ESG005166203 | 4/06/21 - 4/06/22 |
| ESG005166204 | 4/06/22 - 4/06/23 |

(together, the "Primary Policies").

31.     Each of the Primary Policies provides limits of liability of $2,000,000 per occurrence, $2,000,000 in the general aggregate and $2,000,000 in the aggregate for products-completed operations coverage.

32.     The Primary Policies each provide, in relevant part, as follows:

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

**SECTION I – COVERAGES**

**COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

        **(1)** The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

        **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

    No other obligation or liability to pay sums or perform acts or services is covered unless expressly provided for under Supplementary Payments—Coverages A and B.

    **b.** This insurance applies to "bodily injury" and "property damage" only if:

        **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory". The "bodily injury" or "property damage" was not continuous or progressive "bodily injury" or "property damage" over any length of time arising out of any "occurrence", claim or "suit" unless such "bodily injury" or "property damage" first commenced during the policy period;

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence' or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part, if such a listed insured or authorized "employee" knew, prior the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage' during or after the policy period will be deemed to have been known prior to the policy period.

The "bodily injury" or "property damage" was not continuous or progressive "bodily injury" or "property damage" over any length of time arising out of any "occurrence", claim or "suit" unless such "bodily injury" or "property damage" first commenced during the policy period.

**c.** "Bodily injury" or "property damage" which first occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

***

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

33.     The Primary Policies each contain the following exclusions:

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

***

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

\*\*\*

**Continuous or Progressive "Bodily Injury" or "Property Damage"**

"Bodily injury" or "property damage" which is continuous or progressive and which first commenced prior to the inception date of this policy. This exclusion shall apply whether or not the insured's legal obligation to pay for damages for "bodily injury" or "property damage" was established before the inception date of this policy.

34. The Primary Policies contain the following pertinent definitions:

**SECTION V – DEFINITIONS**

\*\*\*

**8.** "Impaired Property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

*\*\**

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf. However, such part of a contract or agreement shall only be considered an "insured contract" to the extent your assumption of the tort liability is permitted by law. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

*\*\**

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

*\*\**

14. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

In the event of continuous or progressive "bodily injury" or "property damage" over any length of time, such "bodily injury" or "property damage" shall be deemed to be one "occurrence", and shall be deemed to occur only when such "bodily injury" or "property damage" first commenced.

*\*\**

16. "Products-completed operations hazard":

    **a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

      **(1)** Products that still in your physical possession; or

      **(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

        **(a)** When all of the work called for in your contract has been completed.

        **(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

        **(c)** When that part of the work done at a job site has been put to its intended use by any person organization other than another contractor or subcontractor working on the same project.

    Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed. …

***

**17.** "Property Damage" means:

    **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

***

**21.** "Your product":

    **a.** Means:

      **(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

        **(a)** When all of the work called for in your contract has been completed.

        **(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

12

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

**a.** Means:

**(1)** Work or operations performed by you or on your behalf; and

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

**(2)** The providing of or failure to provide warnings or instructions.

35.     The Primary Policies each contain an ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS endorsement CG 20 37 10 01 ("AI Endorsement"), which provides in relevant part:

**SCHEDULE**

| |
|---|
| **Name of Person or Organization:**<br>AS REQUIRED BY WRITTEN CONTRACT SIGNED BY BOTH PARTIES PRIOR TO LOSS |
| **Location And Description of Completed Operations:**<br><br>ALL LOCATIONS |
| **Additional Premium:**<br>… |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**Section II – Who Is An Insured** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of "your work" at the location designated and described in the schedule of this endorsement performed for that insured and included in the "products-completed operations hazard".

36.     The Primary Policies each contain a PRIMARY AND NON-CONTRIBUTORY WORDING (AS REQUIRED BY WRITTEN CONTRACT) endorsement SLC 016 0912 ("Primary Endorsement"), which provides in pertinent part:

The following additional provisions apply to any person or entity added as an additional insured by endorsement to this policy:
                                        ***

3.  Notwithstanding any other provision of this policy or any endorsement attached thereto, no coverage shall be afforded under this policy for any loss, cost or expense arising out of the sole negligence of any additional insured or any person or organization acting on behalf of any additional insured.

37.     The Primary Policies each contain an EXCLUSION – OPERATIONS COVERED BY A DEDICATED INSURANCE PROGRAM endorsement SLC 040 0514, which provides in relevant part:

This insurance does not apply to any "bodily injury", or "property damage", or "personal and advertising injury":

Arising out of either your ongoing operations or operations included within the "products-completed operations hazard" which are performed by or on your behalf and which are insured under any "dedicated insurance program".

This exclusion applies whether or not the "dedicated insurance program":

1)  Provides coverage to one or more contractors;
2)  Provides multiple lines of coverage;
3)  Provide coverage identical to that provided by this coverage part;
4)  Has limits adequate to cover all claims; or
5)  Remains in effect.

For the purpose of this endorsement, "dedicated insurance program" means a Contractor-Controlled Insurance Program, Wrap-Up program(s), Owner-Controlled Insurance Program, or any other similar Wrap-Up program and any

other job or project-specific insurance program(s), whether provided by you, or any other person or entity.

## THE EXCESS POLICIES

38.    IHIC also issued the following excess insurance policies to Yuanda which are the

subject of this action (copies of which attached as Exhibits G-N):

| Policy Number | Policy Period |
|---|---|
| SXS0045655 | 4/06/15 – 4/06/16 |
| SXS004565501 | 4/06/16 – 4/06/17 |
| SXS004565502 | 4/06/17 - 4/06/18 |
| SXS004565503 | 4/06/18 - 4/06/19 |
| SXS004565504 | 4/06/19 - 4/06/20 |
| SXS004565505 | 4/06/20 - 4/06/21 |
| SXS004565506 | 4/06/21 - 4/06/22 |
| SXS004565507 | 4/06/22 - 4/06/23 |

(together, the "Excess Policies").

39.    Each of the Excess Policies provides limits of liability of $5,000,000 per occurrence

and  $5,000,000 in the aggregate (where applicable).

40.    The Excess Policies are policies of excess liability insurance that sit above

scheduled underlying insurance.

41.    The Excess Policies identify each of the following as the "Controlling Underlying

Policy" in Item 4. of the Declarations (as amended by endorsement):

| Excess Policy Number | Controlling Underlying Policy |
|---|---|
| SXS0045655 | Colony Ins. Co. #103 GL 0009175-00 |
| SXS004565501 | Gemini Ins. Co. #VIGP017474 |
| SXS004565502 | Gemini Ins. Co. #VIGP018192 |
| SXS004565503 | IHIC #ESG0051662 |
| SXS004565504 | IHIC #ESG005166201 |
| SXS004565505 | IHIC #ESG005166202 |
| SXS004565506 | IHIC #ESG005166203 |
| SXS004565507 | IHIC #ESG005166204 |

42.     The Excess Policies provide, in pertinent part, as follows:

**Various provisions in this policy restrict coverage. Please read the entire policy carefully to determine your rights, duties and what is and is not covered. Where used in this policy the words "you" and "your" refer to the Named Insured as shown in Item 1 of the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance coverage as shown in the box marked "Issuing Company" at the top of the Declarations. Other words and phrases that are in quotation marks have special meaning. Please refer to the SECTION VI - DEFINITIONS for explanations.**

\*\*\*

**SECTION I – INSURING AGREEMENT**

A.  We will pay on your behalf all "Loss" that you become legally obligated to pay in excess of all "Underlying Insurance" as shown in Item 4. of the Declarations providing that:

   1.  Such "Loss" is insured by all of the policies shown in our Schedule of "Underlying Insurance". If any "Underlying Insurance" does not pay damages, for reasons other than exhaustion of the aggregate limit of insurance, then we shall not pay such damages;

   2.  "Underlying Insurance" has been reduced or exhausted by payment of "Loss" to which this policy applies. In the event of a reduction or exhaustion in the underlying limit to payment of such "Loss" we will:

      a.  Pay excess over the reduced underlying limit of the "Underlying Insurance"; or

      b.  Continue in force should the "Underlying Insurance" be completely depleted.

B.  The terms, conditions, definitions, limitations and exclusions of the "Controlling Underlying Policy", as shown in the Schedule of "Underlying Insurance", apply to this policy unless they are inconsistent with the provisions of this policy. Insurance provided by this policy will not be broader than the insurance provided by the "Underlying Insurance".

\*\*\*

**SECTION II – DEFENSE PROVISIONS**

A.  We have no duty to assume control of the investigation, defense or settlement of any claim, suit or proceeding; however, we will assume the defense of a suit brought against the "Insured" seeking damages to which this policy applies:

16

1. If all insurers providing the "Underlying Insurance" were obligated by the terms and conditions of their policies to assume the defense of such suit; and

2. After all the applicable limits of insurance of the "Underlying Insurance" have been exhausted by the actual payment of "Loss" to which this policy applies.

*** 

43. The Excess Policies contain the following definitions:

**SECTION VI – DEFINITIONS**

A. "Controlling Underlying Policy" means the policy shown in Item A. of the Schedule of "Underlying Insurance" of this policy.

B. "Defense Expenses" will have the same definition as such term or the equivalent term in the "Controlling Underlying Policy". If not defined in the "Controlling Underlying Policy", "Defense Expenses" will mean reasonable and necessary expenses and costs incurred in investigating and defending against any claim, suit or other proceeding, and will include, without limitation, attorneys' fees.

C. "Insured" means each entity or person which is insured under all "Underlying Insurance" in the same capacity as which such insurance is afforded.

D. "Loss" will have the same definition as such term or the equivalent term in the "Controlling Underlying Policy". If there is no definition of "Loss" or equivalent term in the "Controlling Underlying Policy" then "Loss" shall mean:

The total sum, after reduction for recoveries, or salvages collectible, that the "Insured" becomes legally obligated to pay as damages by reason of:

a. Settlements, judgments, binding arbitration; or

b. Other binding alternate dispute resolution proceedings entered into with our consent.

"Loss" includes "Defense Expenses" if all of the "Underlying Insurance" specifies that limits are reduced by "Defense Expenses".

E. "Occurrence" will have the same definition as in the "Controlling Underlying Policy." To the extent that this term is not used in the "Controlling Underlying Policy" then "Occurrence" will have the same meaning as the equivalent term in the "Controlling Underlying Policy".

17

F.  "Other Insurance" means insurance, other than "Underlying Insurance", which has been provided to you and affords coverage with respect to injury or damage to which this policy applies. Other Insurance does not include any policy of insurance specifically purchased to be excess of this policy affording coverage that this policy also affords.

G.  "Underlying Insurance" means the policy or policies of insurance as described in Item 4 of the Declarations and the Schedule of Underlying Insurance forming a part of this policy.

44.  Together, the Excess Policies and the Primary Policies are collectively referred to herein as the "IHIC Policies."

## THE YUANDA/MCHUGH CLARK SUBCONTRACT

45.  On or about February 27, 2014, Yuanda and McHugh/Clark entered into a subcontract (the "Subcontract"). A copy of the Subcontract is attached hereto as Exhibit O.

46.  Pursuant to the terms of the Subcontract, Yuanda was obligated to furnish and pay for all labor, materials, tools, supplies, equipment, services, patching and other items necessary to fully perform all of McHugh/Clark's obligations under the Construction Contract for the supply and installation of all "Aluminum Window Work" for the Building.

47.  The "Aluminum Window Work" called for in the Subcontract included but was not limited to: Aluminum & Glass Railing System; Insulated Composite Wall Panels; Aluminum Terrace Doors and Frames; Aluminum Storefront and Entrances; Structural Glass Curtain Wall; Aluminum Windows; Glazing (Non-Curtain Wall); Quality Control for Exterior Wall System (associated with the work); Aluminum Railing System (associated with the work); Aluminum Sheet Metal Flashing and Trim (associated with the work); Through-Penetration Fire stop System (associated with the work); Sealant (associated with the work); and Finish Hardware (associated with the work).

48.     Article 10 of the Subcontract ("Article 10") also required that the general liability insurance coverage that Yuanda was obligated to purchase pursuant to Exhibit C to the Subcontract name McHugh/Clark and other parties designated in Exhibit C as additional insureds.

49.     Pursuant to the terms of the Subcontract and the AI Endorsements McHugh/Clark qualifies as an additional insured under the Primary Policies only with respect to liability arising out of Yuanda's work at the Building performed for McHugh/Clark and only if such work is included in the "products-completed operations hazard".

**COUNT I**
**(Declaratory Judgment Against McHugh/Clark – Primary Policies – No Damages Because of "Property Damage")**

50.     IHIC hereby incorporates Paragraphs 1–49 of this Complaint as if fully set forth herein.

51.     The Insuring Agreements of Coverage A – Bodily Injury and Property Damage Liability of the Primary Policies state that they only provide coverage for "those sums that the insured becomes legally obligated to pay as damages because of … 'property damage' to which this insurance applies."

52.     The Primary Policies define "property damage" to mean, in part, "[p]hysical injury to tangible property…" or "[l]oss of use of tangible property that is not physically injured…."

53.     The Underlying Complaint seeks damages from McHugh/Clark for breach of the Construction Contract, breach of express warranties in the Construction Contract; and seeks to impose strict liability on McHugh/Clark for creating an unreasonably dangerous condition in the Building.

54.     The Underlying Complaint seeks to recover from McHugh/Clark "all costs of replacing all support arms for the Building's vent windows with appropriate hardware,"

reimbursement of all rent reductions and other costs associated with "disruptions to the Building's tenants," as well as attorneys' fees and costs.

55. The Underlying Complaint does not allege that BIT WPW is seeking any damages from McHugh/Clark "because of" physical injury to any tangible property or any loss of use of tangible property not physically injured.

56. The Underlying Complaint does not allege any "damages because of … 'property damage,'" within the meaning of the Primary Policies.

57. Therefore, IHIC has no duty to defend or indemnify McHugh/Clark against the Suit under the Primary Policies.

58. An actual controversy exists between IHIC and McHugh/Clark concerning whether McHugh/Clark is entitled to coverage, defense and/or indemnity under the IHIC Policies for the claims asserted against it in the Suit.

**WHEREFORE** for the reasons set forth above, Plaintiff, Indian Harbor Insurance Company, respectfully prays for judgment as follows:

    A. Declaring that IHIC has no duty or obligation under the Primary Policies to defend McHugh/Clark or to pay for or reimburse any defense costs McHugh/Clark incurs in connection with the Suit;

    B. Declaring that IHIC has no duty or obligation under the Primary Policies to indemnify McHugh/Clark with respect to the Suit; and

    C. Awarding such other and further relief as the Court deems just, equitable, and proper.

<u>**COUNT II**</u>
<u>**(Declaratory Judgment Against McHugh/Clark – Primary Policies – No "Occurrence")**</u>

59.     IHIC hereby incorporates Paragraphs 1–58 of this Complaint as if fully set forth herein.

60.     The Insuring Agreements of Coverage A – Bodily Injury and Property Damage Liability of the Primary Policies state that they provide coverage for "property damage" "only if" "[t]he … 'property damage' is caused by an occurrence…."

61.     The Primary Policies define "occurrence" to mean, in part, "an accident, including continuous or repeated exposure to substantially the same general harmful conditions…."

62.     The Underlying Complaint seeks to hold McHugh/Clark liable for its breach of its contractual obligations under the Construction Contract and to hold it strictly liable for creating an unreasonably dangerous condition at the Building.

63.     The Underlying Complaint does not allege any "accident" by McHugh/Clark.

64.     The Underlying Complaint does not allege any "occurrence" within the meaning of the Primary Policies.

65.     Therefore, IHIC has no duty to defend or indemnify McHugh/Clark against the Suit under the Primary Policies.

66.     An actual controversy exists between IHIC and McHugh/Clark concerning whether McHugh/Clark is entitled to coverage, defense and/or indemnity under the IHIC Policies for the claims asserted against it in the Suit.

**WHEREFORE** for the reasons set forth above, Plaintiff, Indian Harbor Insurance Company, respectfully prays for judgment as follows:

A. Declaring that IHIC has no duty or obligation under the Primary Policies to defend McHugh/Clark or to pay for or reimburse any defense costs McHugh/Clark incurs in connection with the Suit;

B. Declaring that IHIC has no duty or obligation under the Primary Policies to indemnify McHugh/Clark with respect to the Suit; and

C. Awarding such other and further relief as the Court deems just, equitable, and proper.

## COUNT III
### (Declaratory Judgment Against McHugh/Clark – Primary Policies – Contractual Liability Exclusion Bars Coverage for the Suit)

67.     IHIC hereby incorporates Paragraphs 1–66 of this Complaint as if fully set forth herein.

68.     In the alternative, should the Court find that the Suit seeks damages because of "property damage" caused by an "occurrence," IHIC would still not owe McHugh/Clark any coverage for the Suit because of the Contractual Liability Exclusion found in each of the Primary Policies.

69.     The Contractual Liability Exclusion contained in each of the Primary Policies bars coverage for "'property damage' for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement."

70.     The Underlying Complaint alleges that, under the Construction Contract, McHugh/Clark agreed to "be responsible to Owner [BIT WPW] for acts and omissions of Contractor's [McHugh/Clark] employees, suppliers, consultants, Subcontractors and Sub-Subcontractors and their respective agents and employees, and all other persons or entities performing portions of the Work."

71.     As a result, and only to the extent that there is any "property damage" caused by an "occurrence," the Contractual Liability Exclusion in each of the Primary Policies also applies to bar coverage for the Suit based on McHugh/Clark's assumption of liability in the Construction Contract.

72.     An actual controversy exists between IHIC and McHugh/Clark concerning whether McHugh/Clark is entitled to coverage, defense and/or indemnity under the IHIC Policies for the claims asserted against it in the Suit.

**WHEREFORE** for the reasons set forth above, Plaintiff, Indian Harbor Insurance Company respectfully prays for judgment as follows:

A.  Declaring that IHIC has no duty or obligation under the Primary Policies to defend McHugh/Clark or to pay for or reimburse any defense costs McHugh/Clark incurs in connection with the Suit;

B.  Declaring that IHIC has no duty or obligation under the Primary Policies to indemnify McHugh/Clark with respect to the Suit; and

C.  Awarding such other and further relief as the Court deems just, equitable, and proper.

## COUNT IV
### (Declaratory Judgment Against McHugh/Clark – Excess Policies – No Coverage Under Controlling Underlying Insurance and No Exhaustion of Underlying Insurance)

73.     IHIC hereby incorporates Paragraphs 1–72 of this Complaint as if fully set forth herein.

74.     The Excess Policies follow the same terms, conditions, definitions, limitations and exclusions that are contained in the "controlling underlying policy," unless those provisions are

inconsistent with the provisions of each Excess Policy. In addition, coverage provided under the Excess Policies will not be broader than "underlying insurance."

75.     The schedule of "underlying insurance" in each of the Excess Policies identifies the following as the "controlling underlying policy":

| Excess Policy Number | Controlling Underlying Policy |
|---|---|
| SXS0045655 | Colony Ins. Co. #103 GL 0009175-00 |
| SXS004565501 | Gemini Ins. Co. #VIGP017474 |
| SXS004565502 | Gemini Ins. Co. #VIGP018192 |
| SXS004565503 | IHIC #ESG0051662 |
| SXS004565504 | IHIC #ESG005166201 |
| SXS004565505 | IHIC #ESG005166202 |
| SXS004565506 | IHIC #ESG005166203 |
| SXS004565507 | IHIC #ESG005166204 |

76.     The Excess Policies each follow form to the corresponding "controlling underlying policy" identified immediately above as respects the definitions of "property damage" and "occurrence" and as respects the Contractual Liability Exclusion.

77.     As set forth in Counts I-III, above, there is no coverage available for McHugh/Clark under the Primary Policies for the Suit because: (1) the Underlying Complaint does not seek any damages because of "property damage"; (2) the Underlying Complaint does not allege any "occurrence"; and (3) in the alternative, even if the Underlying Complaint did allege "property damage" caused by an "occurrence," coverage for the Suit is precluded by the Contractual Liability Exclusion.

78.     The three controlling underlying policies identified in Paragraph 75 above that were issued by Colony Insurance Company and Gemini Insurance Company (collectively, the "Other Primary Policies") contain substantially the same insuring agreements, definitions of "property damage" and "occurrence", and Contractual Liability Exclusions. Copies of those policies are attached as Exhibits P-R.

79.     Therefore, there is no coverage for McHugh/Clark with respect to the Suit under the Primary Policies and the Other Primary Policies.

80.     Consequently, there is no coverage available to McHugh/Clark under the Excess Policies for the Suit because the Excess Policies follow the terms and conditions of the Primary Policies and the Other Primary Policies, and none of those policies provide coverage for the Suit.

81.     Coverage under the Excess Policies does not attach unless and until the applicable limits of liability of the controlling "underlying insurance" have been exhausted in connection with the payment of judgments or settlements.

82.     The limits of insurance for the Primary Policies and, on information and belief, the Other Primary Policies, have not been paid in connection with any judgments or settlements.

83.     IHIC is entitled to a declaratory judgment that, to the extent that coverage is not otherwise barred by the terms, conditions and exclusions of the Excess Policies (and any controlling underlying insurance policies to which the Excess Policies follow form), no obligations arise under the Excess Policies unless and until the applicable limits of liability of all underlying insurance have been properly exhausted.

84.     An actual controversy exists between IHIC and McHugh/Clark concerning whether McHugh/Clark is entitled to coverage, defense and/or indemnity under the Excess Policies for the claims asserted against it in the Suit, and whether and/or to what extent (if at all) coverage under any of the Excess Policies has attached because the limits of liability of all applicable underlying insurance are not exhausted.

**WHEREFORE** for the reasons set forth above, Plaintiff, Indian Harbor Insurance Company respectfully prays for judgment as follows:

A. Declaring that IHIC has no duty or obligation under the Excess Policies to defend McHugh/Clark or to pay for or reimburse any defense costs McHugh/Clark incurs in connection with the Suit;

B. Declaring that IHIC has no duty or obligation under the Excess Policies to indemnify McHugh/Clark with respect to the Suit;

C. In the alternative, declaring that, if coverage is not otherwise barred, no coverage obligations arise under the Excess Policies unless and until the applicable limits of liability of all underlying insurance are fully and properly exhausted; and

D. Awarding such other and further relief as the Court deems just, equitable, and proper.

## COUNT V
### (Other Potential Policy Defenses – Primary and Excess Policies)

85. IHIC hereby incorporates Paragraphs 1–84 of this Complaint as if fully set forth herein.

86. To the extent that the Suit seeks to hold McHugh/Clark responsible for liability which does not arise from Yuanda's work at the Building performed for McHugh/Clark, McHugh/Clark would not qualify as an additional insured under the terms of the AI Endorsements, and therefore McHugh/Clark would not be entitled to coverage for the Suit under the IHIC Policies.

87. There is no coverage for McHugh/Clark under each of the Primary Policies to the extent that the Suit seeks liability for any continuous or progressive damage that commenced prior to the inception date of any one or more of the Primary Policies pursuant to exclusion for continuous or progressive "bodily injury" or "property damage" found in each of the Primary Policies.

26

88.    There is no coverage for the Suit under the Primary Policies to the extent that there was a "dedicated insurance program" which provided coverage for any "property damage" arising out of any ongoing or completed operations at the Building, pursuant to the Dedicated Insurance Program Exclusion found in each of the Primary Policies.

89.    To the extent that the Suit seeks to hold McHugh/Clark responsible for its (or any person or organization acting on its behalf) sole negligence, the Primary Policies do not provide any such coverage pursuant to the Primary and Non-Contributory Wording (As Required By Written Contract) endorsement found in each of the Primary Policies.

90.    To the extent that any coverage obligations arise under the Primary Policies, such coverage may be barred by the application of the Damage to Your Product, Damage to Your Work, Damage to Impaired Property or Property Not Physically Injured, and/or Recall of Products, Work or Impaired Property exclusions found in each of the Primary Policies.

91.    To the extent that McHugh/Clark expected or intended any "property damage", coverage for same under the Primary Policies is barred pursuant to the Expected or Intended Injury exclusion found in each of the Primary Policies.

92.    Coverage for "property damage" (if any) under the Primary Policies is barred to the extent that McHugh/Clark knew prior to each Primary Policy's policy period that any "property damage" had taken place, in whole or in part, pursuant to the Insuring Agreements in the Primary Policies.  All such "property damage" (if any) will be deemed to have been known at the earliest time when McHugh/Clark or any insured receives a written or verbal demand or claim for damages because of said "property damage" or becomes aware by any other means that the "property damage" has occurred or has begun to occur.

93.     There is no coverage for "property damage" (if any) which took place outside of the policy periods of the IHIC Policies.

94.     IHIC's coverage obligations under the Primary Policies, if any, are subject to any Deductible Liability Insurance endorsements contained therein.

95.     To the extent that any coverage obligations arise under the Excess Policies, such obligations are subject to the complete and proper exhaustion of any and all applicable limits of insurance of the "Underlying Insurance" as that term is defined in the Excess Policies.

96.     There is no coverage under the Excess Policies to the extent that there is no coverage under the terms and conditions of each applicable "controlling underlying policy".

97.     There is no coverage to the extent that McHugh/Clark failed to notify IHIC of an "occurrence" and/or an offense which may result in a claim and/or failed to forward to IHIC every demand, claim or suit or any other development likely to affect IHIC's liability in a timely manner as required by the IHIC Policies.

98.     IHIC has no liability under any of the IHIC Policies to the extent that McHugh/Clark made any voluntary payment, assumed any obligation, and/or incurred any expense without IHIC's consent.

99.     Coverage is barred to the extent that McHugh/Clark failed to mitigate, minimize, or avoid any damage that it allegedly did or will sustain in connection with the claims for which coverage is sought.

100.     Coverage, if any, under the IHIC Policies is subject to the IHIC Policies' stated limits of liability, including all corresponding endorsements thereto.

101.    To the extent McHugh/Clark has failed to perform all of its obligations and duties and/or comply with all conditions precedent and subsequent under the IHIC Policies, coverage, if any, is barred.

102.    IHIC reserves the right to seek to amend this Complaint and to assert additional defenses as additional information becomes available.

**WHEREFORE** for the reasons set forth above, Plaintiff, Indian Harbor Insurance Company respectfully prays for judgment as follows:

A.  Declaring that IHIC has no duty or obligation under either the Primary or Excess Policies to defend McHugh/Clark or to pay for or reimburse any defense costs McHugh/Clark incurs in connection with the Suit;

B.  Declaring that IHIC has no duty or obligation under either the Primary or Excess Policies to indemnify McHugh/Clark with respect to the Suit; and

C.  Awarding such other and further relief as the Court deems just, equitable, and proper.

Dated: November 1, 2023

Respectfully submitted,

INDIAN HARBOR INSURANCE COMPANY

By: _/s/    Thomas D. Ferguson_____
      One of Its Attorneys

Dena Economou
Thomas D. Ferguson
**KARBAL, COHEN, ECONOMOU,
SILK & DUNNE, LLC**
200 South Wacker Drive, Suite 2550
Chicago, IL 60606
Tel:    312-431-3700
Fax:    312-431-3670
deconomou@karballaw.com
tferguson@karballaw.com